**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:51 PM May 25, 2016**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| DENNIS EUGENE MAYNARD | ) | CASE NO. 13-62374 |
| AND GOLDIE EILEEN | ) | |
| MAYNARD, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Debtors. | ) | **MEMORANDUM OF OPINION** |
| | ) | |

Debtors moved to redeem two vehicles pursuant to 11 U.S.C. § 722. No objections were filed. The court took the motions under review *sua sponte*.

The court has subject matter jurisdiction of this case under 28 U.S.C. §§ 1334 and 157 and the general order of reference 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. The court has authority to make final entries. Venue in this district is appropriate under 11 U.S.C. § 1409.

## FACTS

Debtors filed a chapter 13 petition on September 26, 2013. Among their assets and liabilities were a 2003 Dodge Durango secured by a lien in favor of Santander and a 2003 Jeep Cherokee Lorado (sic) secured by Wilshire Consumer Credit ("Wilshire"). According to Schedule D, the Durango was worth $2,947.00 and Debtors owed $10,000.00; the Jeep was

1

valued at $2,500.00 and Debtors owed $2,100.00.

Debtors proposed to cramdown both claims.   Per their October 1, 2013 plan, Santander was to receive a secured value of $2,947.00 at 5.25% interest with the balance paid as an unsecured debt.   Wilshire was to receive $2,100.00 as the secured portion of its claim at 5.25% interest.[1]

On October 1, Santander Consumer USA Inc., as Servicer for Citi ("Santander"), filed a proof of claim for $10,430.09 plus 22.25% interest.   Santander's proof of claim valued the Durango at $5,650.00.   On November 12, 2013, Westlake Financial Services filed a proof of claim for a 2003 Jeep Grand Cherokee in the amount of $4,067.09 at 105.78% annual percentage rate ("APR") of interest.   The claim asserted a secured value of $5,665.00 for the Jeep. Wilshire Consumer Credit filed an amended claim on April 29, 2014 for $3,001.27 at 25% interest and valued the Jeep at $5,450.00.

Debtors filed an amended plan on January 8, 2014.   Santander's claim treatment did not change.   Wilshire's claim was subject to greater cramdown because Debtors now valued the Jeep Laredo at $1,500.00.   Wilshire filed an objection to the amended plan, arguing claim was a "910" claim under 11 U.S.C. § 1325(a) and therefore not subject to cramdown.   Wilshire sought payment in full of its $4,067.09 claim at 5.25% interest.   Its objection was later amended to argue Debtors' plan was not proposed in good faith under 11 U.S.C. 1324 because Debtors obtained the loan from Wilshire on September 10, 2013, just over two weeks before they filed bankruptcy.   Wilshire argued it was entitled to payment in full of the claim at the contract rate and also argued the vehicle was worth $5,365.00.   Debtors and Wilshire entered into an agreed order on May 16, 2014 whereby Debtors agreed to pay the claim in full at 5.25% interest. Monthly payments were $400.00 per month.

Debtors' third amended plan, filed on May 29, 2014, did not change the treatment of Santander's claim.   The new cramdown value of the Wilshire claim was $3,001.27 at 5.25% interest.   The court confirmed this plan on August 7, 2014.

On December 29, 2015, the Santander claim was transferred to Peritus Portfolio Services II, LLC ("Peritus").

Debtors converted their case to chapter 7 on January 26, 2016.   On March 25, 2016, Debtors filed two motions to redeem.   In both motions, Debtors seek to redeem the vehicles for the amounts paid to the creditors in the chapter 13 proceeding.   For Santander, Debtors state they paid the $2,947 secured value in full, with interest, during the chapter 13.   In the Wilshire motion, Debtors state they paid the full $3,001.27 secured value, plus interest.

The chapter 13 trustee's final report shows that Peritus received $2,947.00 on the secured portion of its claim, plus $63.64 in interest.   It also received $1,584.05 on the unsecured

---

1 The values in the plan conflict with the schedules.   According to the schedules, Wilshire was an oversecured creditor while the plan treats it as undersecured.

($7,483.09) portion of the claim.   Wilshire received $3,001.27 on its claim, plus $70.39 in interest.

## DISCUSSION

The question before the court is whether Debtors are entitled to redeem the vehicles based on the preconversion amounts paid on the allowed secured claims.   Phrased differently, should the valuation made for cramdown purposes in chapter 13 survive conversion and govern redemption payments under § 722?   Section 722 of the bankruptcy code governs redemption and provides, in applicable part:

> An individual debtor may . . . . redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

11 U.S.C. § 722.

## I.      History of postconversion redemption

At one point in Sixth Circuit jurisprudence, debtors were definitively prevented from exercising their redemption rights in chapter 7 based on preconversion amounts paid to a secured creditor.   Liberty Nat'l Bank & Tr. Co. v. Burba (In re Burba), 42 F.3d 1388, 1994 WL 709314, (6th Cir. 1994) (unpublished).   In Burba, the debtors attempted to redeem a vehicle by paying the amount remaining on the allowed secured claim as determined under the chapter 13 plan. Debtors had paid the secured portion of the allowed secured claim except for the accrued interest, which they sought to pay as the amount necessary to redeem the vehicle following conversion.   Both the bankruptcy court and the district court sanctioned the proposed redemption but the Sixth Circuit Court of Appeals reversed upon finding that "bifurcation of a claim pursuant to § 506(a) and stripping down the lien to the value of the collateral in a Chapter 13 proceeding does not survive for redemption purposes upon conversion to Chapter 7."   Id. at *9.

The Sixth Circuit disagreed with the lower courts reliance on In re Hargis, 103 B.R. 912 (Bankr. E.D. Tenn. 1989), in the face of Dewsnup v. Timm, 112 S.Ct. 773 (1992).   Under Hargis, once a claim was bifurcated into secured and undersecured portions based on the value of the collateral per § 506(a), creating an "allowed secured claim," § 506(d) operated to extinguish the lien upon payment of the secured portion.   Conversion did nothing to alter this treatment. Thus, all that remained upon conversion was an unsecured claim and no secured claim to redeem under § 722.   Applying Hargis to the facts in Burba, the lower court found that all but the interest on the secured portion of the claim had been paid, allowing the debtor to redeem the

3

vehicle for payment of the accrued interest remaining on the allowed secured claim.

Dewsnup did not ratify this understanding of §§ 506(a) and (d) in chapter 7 cases. The Supreme Court found that the undersecured portion of a lien cannot be stripped in a chapter 7 case, opining

> the lien avoidance language of § 506(d) only performs the
> function of voiding a lien on a claim which itself has not
> been allowed as a claim in the bankruptcy process; section
> 506(d) does not authorize voiding a lien on a claim that has
> been bifurcated pursuant to 506(a) into "an allowed secured
> claim" and an unsecured claim, striping the lien down to the
> value of the "allowed secured claim."

Burba, 1994 WL 709314 at *5. In chapter 7, the lien survives.

However, the court recognized the majority view that differences in chapter 13 practice, including permissible modifications under § 1322(b) and cramdowns under § 1325(b), mean Dewsnup does not apply in chapter 13 cases. This leaves open the question of whether, upon payment of the allowed secured claim in chapter 13, the lien is extinguished.[2] The Burba court was able to skirt this question because the debtor had not paid the outstanding interest on the allowed secured claim, leaving it unsatisfied.

Regardless, the court concluded that "bifurcation of the claim pursuant to § 506(a) and stripping down the lien to the value of the collateral in a Chapter 13 proceeding does not survive for redemption purposes upon conversion to Chapter 7." Id. at *9. In part, this was based on the perceived inequity resulting from allowing a debtor to convert, and abandon the chapter 13 case, while still retaining benefits that would come with the completion of payments and discharge.

The court also cited three additional reasons for not allowing the allowed secured claim to transfer into chapter 7. First, it would provide opportunity for a debtor to end-run Dewsnup by paying the secured value of mortgage and then convert to chapter 7 and redeem for the amount paid. Second, upon conversion, a case is treated as though it were filed under chapter 7. 11 U.S.C. § 348. The debtor's proposed redemption violates tenets of chapter 7. Chapter 7 contemplates lump sum redemption to provide a creditor with what it is likely to obtain upon foreclosure of the lien. Permitting a debtor to make payments on an allowed secured claim and then convert forces a creditor into an installment payment redemption situation not intended under the bankruptcy code. And finally, the practice would encourage debtors to file chapter 13, pay the secured value, then convert, most likely to the detriment of the unsecured creditors. These reasons convinced the Sixth Circuit that reliance on Hargis was misplaced, leading the court to hold "for purposes of redemption pursuant to § 722, a debtor may not redeem qualifying personal property from the lien of a creditor by paying the remaining balance due on the

---

2 This question is answered by 11 U.S.C. § 348(f)(1)(C)(i), discussed later.

4

creditor's Chapter 13 "allowed secured claim," but the value of the collateral must be redetermined upon conversion." Id. at *17.

Although Burba was originally a published opinion, it was later de-published. That action may have been in response to 1994 amendments to the bankruptcy code which added § 348(f), authorizing the treatment Burba prevented.[3] Since Burba applied to a pre-amendment case, the court may have determined it would have little precedential value. Per the new § 348(f)(1)(B), "valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan." The addition of § 348 effectively nullified Burba opinion. In re Dean, 281 B.R. 912 (Bankr. W.D. Tenn. 2002).

But the addition of § 348(f) did not end this odyssey. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 made further amendments to § 348(f). The provision now states, in its entirety:

> (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter of this title--
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
>
> (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7, with allowed secured claim in cases under chapters 11 and 12 reduced to the extent that they have been paid in accordance with the chapter 13 plan and
>
> (C) with respect to cases converted from chapter 13—
>
> (i) the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of

---

3 The nonretroactive amendment applied to bankruptcy cases filed after October 22, 1994. The Burba decision was issued on November 10, 1994.

5

the case under chapter 13; and

> (ii)     unless a prebankruptcy default has been fully cured under the plan at the time of the conversion, in any proceeding under this title or otherwise, the default shall have the effect given under applicable nonbankruptcy law.

11 U.S.C. § 348(f).

The 2005 change certainly changed the course of redemption after conversion. No longer does the determination of allowed secured claim carry through to chapter 7, nor is that claim reduced by the payments in chapter 13. Moreover, the creditor retains the lien unless the full amount of the claim, as determined under nonbankruptcy law, was paid. In re McGregor, 449 B.R. 468 (Bankr. D. S.C. 2011). The amendment provides no further guidance. Collier's recognizes the conundrum:

> In cases in which section 348(f)(1)(B) does not apply, courts will have to look to other sources to decide the amount of the allowed secured claim in the converted case. The amendment of the 1994 provision with respect to conversion of chapter 13 cases to chapter 7 means that the pre-1994 situation could be re-created and some courts will probably take positions similar to those they had taken prior to the 1994 amendments.

3 Collier on Bankruptcy ¶ 348.07[4], p. 348-27 (16th ed. 2015). The contention for the court is whether it should, once again, look to Burba for its answer. Although unpublished, Burba is directly on point. Since the statutory change clearly steps away from using the valuation and allowed secured claim determined in the chapter 13, and the amounts paid thereon, and specifically states that the creditor retains the lien unless the claim was fully paid, the court follows Burba, which requires a revaluation of the collateral unless the underlying claim was paid in full. Thus, Debtors are not entitled to redeem vehicles based on payment of the allowed secured portion of a bifurcated claim while the case proceeded under chapter 13 unless the lien is fully paid. With this in mind, the court will consider the motions to redeem.

## II.    The Peritus claim and the 2003 Dodge Durango

The court denies the motion to redeem the 2003 Dodge Durango on two separate grounds. First, due process dictates denial because Debtors did not serve the proper party with the motion. Debtors served Santander Consumer USA. The claim transfer agreement filed on December 29, 2015 shows that Peritus now holds the claim.

Moreover, since Peritus did not receive payment in full during the chapter 13 proceeding, it retained its lien in the vehicle. 11 U.S.C. § 348(f)(1)(C)(i). The original claim was in more than $10,000 at 22.25% interest. Peritus received less than $4,600.00 in distributions during the

6

chapter 13 case.   Under <u>Burba</u>, the stripdown of the lien does not survive conversion.   In order to redeem the vehicle, Debtors will need to pay the redemption value of the collateral at the time of conversion.

While this may appear to some to punish Debtors, the Sixth Circuit Court of Appeals rejected this contention, citing the three separate policies outlined above, which this court is unwilling to condemn.   When Debtors filed their chapter 13 case and confirmed their plan, the creditor was forced to accept the cramdown, or replacement value, through installment payments, with interest and any distribution on the unsecured claim, over the life of the plan. <u>Assoc. Commercial Corp. v. Rash</u>, 520 U.S. 953, 963 (1997).   The creditor has missed out on the stream of payments under the original contract and also any dividend on the unsecured portion of the claim under the confirmed chapter 13 plan.   Had Debtors filed a chapter 7 case and sought to redeem the vehicle, they would have paid the liquidation value of the vehicle in a lump sum years ago.   <u>In re Kowalski</u>, 2007 WL 682438 (Bankr. N.D. Ohio 2007) (citing <u>Triad Fin. Corp. v. Weathington (In re Weathington)</u>, 254 B.R. 895, 899 (B.A.P. 6th Cir. 2000) (other citation omitted)).   Instead, Debtors have benefitted from the use of the vehicle for more than two years.   They are in the best position to understand the value of the car.   Requiring them to reaffirm upon conversion leaves them with the ability to redeem for the allowed secured value of the vehicle if they feel the value is supported.   Otherwise, they can surrender the car and move forward.

### III.      The Westlake Financial claim and the 2003 Jeep Cherokee Laredo

The court must also deny the motion to redeem the Jeep.   Although Debtors paid the amount they were obligated to pay under the agreed order with the creditor, this was not the same amount they were obligated to pay under nonbankruptcy law. 11 U.S.C. § 348(f)(1)(C)(i). Since the claim was not paid in full, it was subject to release only upon completion of the chapter 13 plan and discharge.   Upon conversion, the difference in interest between the chapter 13 cramdown amount and the original interest rate is still owed.   Debtors therefore cannot redeem solely based on the amounts paid during the chapter 13 plan.

### CONCLUSION

Over the course of several years, treatment of allowed secured claims for redemption in a case converted from chapter 13 to chapter 7 changed several times.   The last change saw the bankruptcy code migrate from allowing an allowed secured claim in chapter 13 to survive conversion to completely eliminating that treatment under BAPCPA.   Now, the bankruptcy code merely says that, unless the claim in paid in full in accordance with nonbankruptcy law, the lien survives.   Since the lien survives, and the allowed secured claim determined during the chapter 13 case does not, this court finds that <u>Burba</u> directs how to approach a chapter 7 redemption of the collateral.   The collateral must be valued to determine the allowed secured claim.   In order to redeem, a debtor must pay that amount to the creditor.

Debtors have not established they are entitled to redeem the vehicles as proposed in their

motions.   The court will deny both motions by separate order.

\#        \#        \#

**<u>Service List</u>:**

Nicole L. Rohr
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Dennis Eugene Maynard
Goldie Eileen Maynard
2711 Ivanhoe Ave., N.W.
Canton, OH 44709

Wilshire Consumer Credit
4751 Wilshire Blvd, Suite 100
Los Angeles, CA   90010

Peritus Portfolio Services II, LLC/Wollemi
PO. Box 141419
Irving, TX   75014-1419

Edward A. Bailey
Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A.
30455 Solon Road
Solon, OH   44139